**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

Case No. 1:25-cv-25926-DPG

GAVIN JOHNSON, individually and on behalf of all other similarly situated,

Plaintiff,

v.

CONSTELLATION BRANDS, INC., a Delaware corporation, and CONSTELLATION BRANDS U.S. OPERATIONS, INC., a New York corporation,

Defendants.

_______________________________________/

**DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY**

Defendants Constellation Brands, Inc. and Constellation Brands U.S. Operations, Inc. ("Constellation Brands") submit *Pusateri v. Diageo North America, Inc.*, No. 1:25-cv-02482, ECF No. 46 (E.D.N.Y. Sept. 30, 2026) (Exhibit A), as supplemental authority in support of their Motion to Dismiss. Dkt. 40.

In *Pusateri*, the court dismissed claims—including FDUTPA claims—alleging that tequilas labeled "100% de Agave" were adulterated with non-agave sugars for lack of Article III standing. *Id.* at 5–11. The *Pusateri* plaintiffs lacked standing because they did not test their own bottles and failed to allege that adulteration was so widespread that their purchases were likely affected. *Id.* at 6–9. This required temporal and geographic links between the testing and their purchases; temporal proximity alone was insufficient. *Id.* The court found that industry-wide reporting not specific to the defendant did not show

systemic adulteration and that five tested samples were too few to support an inference of systemic mislabeling. *Id.* at 9–10.

Constellation Brands advances the same standing arguments. Dkt. 40 at 11–14; Dkt. 46 at 2–6. The plaintiffs, like those in *Pusateri*, rely on untested purchases, unrelated tested bottles, and industry-wide reporting that does not mention Defendant. *Id.* Plaintiffs lack standing.

DATED: October 1, 2026

*/s/ Angela M. Spivey*
Angela M. Spivey (*pro hac vice*)
Andrew G. Phillips (*pro hac vice*)
William J. Repko, III (Fla. Bar No. 122636)
Jonathan Hermann (*pro hac vice*)
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: (404) 881-7000
Fax: (404) 881-7777
angela.spivey@alston.com
andrew.phillips@alston.com
jay.repko@alston.com
jon.hermann@alston.com

*Attorneys for Defendants Constellation Brands, Inc., and Constellation Brands U.S. Operations, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the foregoing Notice of Supplemental Authority with the Clerk of Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

This 1st day of October, 2026.

*/s/ William J. Repko, III.*
William J. Repko

# Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

AVI PUSATERI, SUSHI TOKYO INC., CHAIM MISHULOVIN, SUSHI TOKYO MIAMI LLC, DAVID FELTON, BARRY WILHELM, SHANNON WILHELM, TRACY COLE, NELSON NJOROGE, ANTOINE DOXON, TIEASE HOLMES, DYONNESHA WOOLFOLK, and TROY REECE on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

DIAGEO NORTH AMERICA, INC.,

Defendant.

**MEMORANDUM AND ORDER**

25-CV-02482 (LDH) (CHK)

LASHANN DEARCY HALL, United States District Judge:

Avi Pusateri, Sushi Tokyo Inc., Chaim Mishulovin, Sushi Tokyo Miami LLC, David Felton, Barry Wilhelm, Shannon Wilhelm, Tracy Cole, Nelson Njoroge, Antoine Doxon, Tiease Holmes, Dyonnesha Woolfolk, and Troy Reece ("Plaintiffs") bring the instant putative class action against Diageo North America, Inc. ("Defendant") alleging violations of New York's Deceptive Acts and Practices Law, N.Y. Gen. Bus. Law § 349, New York's False Advertising Law, N.Y. Gen. Bus. Law § 350, New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8–1, *et seq.*, Florida's Deceptive & Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*, Colorado's Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*, Maryland's Consumer Protection Act, Md. Code Law § 13-101, *et seq.*, Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 PA. Cons. Stat. § 201-1, *et seq.*, Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. § 505/1, *et seq.*, Texas' Deceptive Trade Practices and Consumer Protection Act, Tex. Bus. & Com. Code § 17.4, *et seq.*, and unjust enrichment.

Defendant moves pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the Amended Complaint in its entirety.

## BACKGROUND[1]

Plaintiffs are consumers of Defendant's Casamigos and Don Julio tequilas.[2] (Am. Compl. ¶¶ 7, 11-27, ECF No. 23.) Defendant is one of the largest tequila producers in the world and produces both Casamigos and Don Julio brand tequilas. (Am. Compl. ¶ 28-29.) Casamigos by itself is one of the best-selling and fastest growing tequila brands in the world. (*Id.* ¶ 28.) In 2023, Casamigos was the world's fourth best-selling tequila. (*Id.*) Don Julio is Defendant's "luxury premium tequila" and in 2023, it was the second best-selling tequila in the world. (*Id.* ¶ 29.)

Tequila is an alcoholic spirit that is made from the Blue Weber agave plant.[3] (*Id.* ¶ 4.) Not all tequilas are exclusively made from the Blue Weber agave plant. (*Id.* ¶ 5.) However, tequilas that are made entirely from the Blue Weber agave are often seen as a premium by consumers due to the length of time and difficulty in growing and harvesting the Blue Weber agave plant. (*Id.* ¶¶ 6, 34.) Defendant labels both its Casamigos and Don Julio tequilas as "100% de Agave," and Defendant's website lists both tequila brands as made up of "100% BLUE WEBER AGAVE." (*Id.* ¶¶ 3, 7.) Thus, consumers pay a premium price for Defendant's Casamigos and Don Julio tequilas' based on Defendant's representation that those tequilas are made from Blue Weber agave exclusively. (*Id.* ¶ 7.)

---

[1] The following facts are taken from the complaint as well as documents attached to and incorporated by reference into the Complaint. *See Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (holding that when ruling on a Rule 12(b)(6) motion to dismiss, the Court "confine[s] its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken").

[2] Plaintiffs are both businesses that purchase and serve Defendant's tequila in their regular course of business and individual persons. (Am. Compl. ¶¶ 11-27.)

[3] The plant is also sometimes referred to as "Agave Tequilana" or "Agave Azul [blue]". (Am. Compl. ¶ 4.)

The U.S. Department of Treasury, Alcohol and Tobacco Tax and Trade Bureau ("TTB") regulates tequila's labeling and advertising in 27 C.F.R. Part 5. (*Id.* ¶ 55.) For a spirit to be labelled as tequila in the United States, it must be made in Mexico and comply with Mexico's laws and regulations governing tequila's manufacturing. (*Id.* ¶ 57.) Plaintiffs allege that any agave spirit that fails to provide accurate information in interstate commerce violates the Federal Alcohol Administration Act ("FAAA"), 27 U.S.C. § 205(e), which several states incorporate or impose similar standards to. (*Id.* ¶¶ 63-66.)

The CRT regulates tequila production in Mexico through NOM-006-SCFI-2012-Alcoholic Beverages-Tequila-Specifications ("Tequila NOM"). (*Id.* ¶ 58.) In addition to other requirements regarding what constitutes tequila, the Tequila NOM specifies that products labeled "100% agave azul" and "100% de agave" must be manufactured using Blue Weber agave derived sugars only. (*Id.* ¶¶ 59-61.) The Tequila NOM also imposes strict documentation requirements. (*Id.* ¶ 62.)

Plaintiffs allege that Defendant's Casamigos and Don Julio, despite being labeled and marketed as such, were not 100% agave. (*Id.* ¶ 37.) Plaintiffs first began investigating Defendant's tequilas after the Additive Free Alliance's ("AFA"), an organization dedicated to tequila industry transparency, initial laboratory test determined that Defendant's tequila was adulterated. (*Id.* ¶¶ 36, 38.) Plaintiffs then tested five samples of Defendant's Casamigos and Don Julio products that Plaintiffs purchased directly. (*Id.* ¶¶ 38, 40, 46-47.) The tested tequilas were Casamigos Blanco, Casamigos Reposado, Casamigos Añejo, Don Julio Reposado, and Don Julio 1942 Añejo. (*Id.* ¶ 47.) The testing revealed that the tested products were not made up of 100% agave.[4] (*Id.* ¶ 47.) In addition to Plaintiffs' testing, independent testing similarly

[4] Plaintiffs describe the scientific theory behind the testing in detail. (*Id.* ¶¶ 40-46.)

concluded that Defendant's tequilas were not made of 100% agave. (*Id.* ¶ 49.) Based on the testing, Plaintiffs allege that all of Defendant's tequila products did not contain 100% agave because they were made from the same adulterated base spirit. (*Id.* ¶ 50.) Plaintiffs allege that had they known that Defendant's tequila was not made of 100% agave, they would not have purchased it. (*Id.* ¶¶ 52-53.) Plaintiffs also allege that they intend to purchase Defendant's products again once they have assurance that the products are labeled accurately. (*Id.* ¶ 54.)

**STANDARD OF REVIEW**

When a party moves for dismissal under Rule 12(b)(1) and on other grounds, courts consider the Rule 12(b)(1) challenge first. *See Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990). If a court finds that it lacks subject matter jurisdiction, then "the accompanying defenses and objections become moot." *Id.* "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "If a court lacks subject matter jurisdiction, it must dismiss the action." *Shuford v. United States*, No. 13-CV-06303, 2014 WL 4199408, at *1 (E.D.N.Y. Aug. 21, 2014). A court evaluating a motion to dismiss under Rule 12(b)(1) "accepts as true all factual allegations in the complaint but does not draw inferences favorable to the party asserting jurisdiction." *Foad v. Holder*, No. 13-CV-6049, 2015 WL 1540522, at *2 (E.D.N.Y. Apr. 7, 2015) (citing *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 100 (2d Cir. 2004)). A plaintiff asserting subject matter jurisdiction must prove by a preponderance of the evidence that subject matter jurisdiction exists. *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996)).

The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are substantively "identical."

*Moore v. PaineWebber, Inc.*, 189 F.3d 165, 169 n.3 (2d Cir. 1999). To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Id.* While this standard requires more than a "sheer possibility" of a defendant's liability, *id.*, "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss. *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true." *Id.* (citations omitted).

**DISCUSSION**

Defendant challenge Plaintiffs' standing to bring the instant action by arguing that Plaintiffs have not alleged that they were personally injured. (Def.'s Mem Law Supp. Mot. Dismiss Am. Compl. ("Mot.") 12-20, ECF No. 30-1.) Plaintiffs argue that established they were personally injured because they paid a premium price for Defendant's deceivingly marketed tequila. (Pls.' Opp. Defs' Mot. Dismiss Am. Compl. ("Pls. Opp.") at 11-20, ECF No. 31.) The Court agrees with Defendant.

To establish constitutional standing, a plaintiff must allege "(1) an 'injury in fact,' . . . that is 'concrete and particularized' and 'actual or imminent'; (2) a sufficient 'causal connection between the injury and the conduct complained of'; and (3) a likelihood that 'the injury will be redressed by a favorable decision.'" *Karkare on behalf of JN v. Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Iron Workers Loc. 580*, 140 F.4th 60, 64 (2d Cir. 2025) (quoting

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). In a putative class action, the named plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975). Defendant here does not contest the causality and redressability prongs to standing. (*See* Mot.) Instead, Defendant argues that Plaintiffs failed to show that they were personally injured by Defendant's conduct. (*Id*. at 12.) Thus, the question before the Court is whether Plaintiffs have alleged that they specifically were injured.

Defendant argues that Plaintiffs' did not sufficiently allege a particularized injury because they failed to plead facts that show that they tested their own bottles or that adulterations were so widespread that the bottles they purchased were likely adulterated. (*Id*. at 12-19.) Plaintiffs argue that they have sufficiently pleaded that they were injured through pleading widespread and systemic adulterations in Defendant's tequila. (Pls.' Opp. at 8-13.)

The price-premium theory is widely recognized as a way for a plaintiff to establish her injuries. *Eidelman v. Sun Prods. Corp.*, 2022 WL 1929250, at *1 (2d Cir. June 6, 2022). Under this theory, a plaintiff must allege that she "purchased products bearing *allegedly misleading labels* and sustained financial injury – paying a premium – as a result." *Axon v. Florida's Natural Growers, Inc.*, 813 F. App'x 701, 703-04 (2d Cir. 2020) (emphasis added) (citing *Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 92 (2d Cir 2018)). District courts analyzing the sufficiency of a plaintiff's reliance on testing to support her allegations that a defendant's products was misleadingly labelled find that a plaintiff can proceed in one of two ways. *Barnes v. KOS, Inc.*, No. 7:23-CV-10104, 2025 WL 1928027, at *4 (S.D.N.Y. July 14, 2025) (citing *Lurenz v. Coca-Cola Co.*, No. 22 CV 10941, 2025 WL 2773188, at *3 (S.D.N.Y.

Sept. 29, 2025)). First, a plaintiff can show that she "purchased [misleadingly labelled products]" established through plaintiff "test[ing] [her] own purchases." *Id*. (citations omitted). In the alternative, a plaintiff can show that testing revealed that mislabeling was "so widespread that it was plausible that either specific product lines or all of the defendant's products contained [the adulteration]." *Id*. (citing *Lurenz*, 2025 WL 2773188, at *3). As an initial matter, Plaintiffs' do not contest, and thus concede, that they have not established standing through testing their own bottles. *See Alexander v. Cuomo*, No. 24-CV-02179, 2026 WL 124580, at *3 (E.D.N.Y. Jan. 16, 2026) ("[P]laintiff's failure to address this argument in opposition to the defendants' motions to dismiss amounts to a concession." (internal quotations omitted)). Thus, the Court's standing analysis turns on whether Plaintiffs have sufficiently pleaded that testing revealed systemic and widespread adulterations in Defendant's tequila.

The Court finds that Plaintiffs' pleadings do not. To be sure, Plaintiffs plead that news reporting and industry advocates have all rang the alarm bells that tequila products were adulterated. (Am. Compl. ¶¶ 31-36.) However, Plaintiffs do not allege that any of this news reporting pertained to Defendant specifically. A comparison to *John v. Whole Foods Market Group, Inc.*, a case heavily relied on by Plaintiffs in support of their arguments, is helpful. (*See generally* Pls.' Opp.) In *John*, the Second Circuit found that a press release supported plaintiff's allegation that defendant had overcharged him. *John v. Whole Foods Market Group, Inc.*, 858 F.3d 732, 737-38 (2d Cir. 2017). Important to the Second Circuit's finding was that the press release itself "asserted that the mislabeling by [defendant] was 'systemic' and 'routine.'" *Id*. 737. In contrast, the reporting Plaintiffs included in their allegations, as Plaintiffs have pleaded them, pertain to the tequila industry *writ large*. (Am. Compl. ¶¶ 31-36.) Indeed, Plaintiffs do not even allege that any of the reporting specifically calls out Defendant by name. (*See id*.)

Thus, the reporting that Plaintiffs rely on does not support Plaintiffs' allegation that adulterations in Defendant's products were systemic and widespread. *See Onaka v. Shiseido Americas Corp.*, No. 21-CV-10665, 2023 WL 2663877, at *5 (S.D.N.Y. Mar. 28, 2023) (reporting did not establish that adulterations were systemic and widespread where reporting did not even "address [adulterations] at least by the same manufacturer at issue").

In an attempt to salvage their failing standing argument, Plaintiffs cite to their laboratory testing allegations to argue that the testing revealed widespread and systemic adulterations in Defendant's products. (Pls.' Opp. 8-12.) The Court disagrees with Plaintiffs.

To plead that testing revealed that widespread and systemic adulterations, a plaintiff must link the results of independent testing to the product she purchased. *Hicks v. L'Oreal U.S.A., Inc.*, No. 22 CIV. 1989, 2024 WL 4252498, at *9 (S.D.N.Y. Sept. 19, 2024). A plaintiff links independent testing to purchased products by pleading some temporal and geographic proximity between the testing and the products plaintiff purchased. *See Barnes*, 2025 WL 1928027, at *5-6 (explaining testing did not support plaintiff's allegations that adulterations were widespread and systemic where plaintiff failed to allege facts concerning, among other things, the date or place of the testing) (collecting cases)); *see also Onaka v. Shiseido Americas Corp.*, No. 21-CV-10665, 2023 WL 2663877, at *5 (S.D.N.Y. Mar. 28, 2023) (allegations were insufficient where plaintiff did not temporally link the testing to the products plaintiff's purchased); *See also John*, 858 F.3d at 738 (finding that an investigation supported plaintiff's allegation that mislabeling was widespread and systemic where there was a temporal and geographical link and between the investigation and plaintiff's purchases). Temporal proximity alone is insufficient to link testing to a plaintiff's purchase. *Lurenz*, 2024 WL 2943834, at *4 ("But temporal proximity between the testing and the purchase cannot alone support the inference that the presence of PFAS in a

single sample of a Product means PFAS were present in the Product Plaintiff actually purchased, let alone the 'tens of thousands' of Products sold during the Class Period.").

Plaintiffs' pleadings do not establish either a temporal or geographic link between their purchased products and the laboratory testing. Plaintiffs provide the Court with no information that links either the AFA or the subsequent independent testing to Plaintiffs' purchased products. (Am. Compl. ¶ 38.) Indeed, the only information Plaintiffs do provide as to the tests is the methodology (Am. Compl. ¶¶ 40-46) and the results (Am. Compl. ¶ 38, 47, 49.)

Plaintiffs' own commissioned testing fares no better as Plaintiffs plead only the laboratory testing's methodology, results of testing, and the year the testing was commissioned. (*Id*. ¶ 38, 42-47.) Indeed, courts have found similar testing to Plaintiffs' commissioned testing insufficient to plead that adulterations were pervasive or systemic. *See Lurenz*, 2024 WL 2943834, at *3 (finding plaintiff's testing insufficient to establish that adulterations were system-wide and pervasive where plaintiff "tested only a single sample, and does not allege that the sample was taken from a store he frequented, nor that . . . the presence of [the adulteration] in the Product is the result of a 'pervasive' or 'systemic' practice"). Like in *Lurenz v. Coca-Cola Co.*, No. 22 CV 10941, 2025 WL 2773188, at *3 (S.D.N.Y. Sept. 29, 2025), Plaintiffs here tested only five samples and do not plead that the samples were taken from a store Plaintiffs frequented. Therefore, Plaintiffs have failed to establish key facts that would allow the Court to extrapolate the testings' results broadly to "the [p]roducts they purchased, let alone all consumers who purchased the products." *Barnes,* 2025 WL 1928027, at *6 (internal quoted and citations omitted). Accordingly, the Court finds that Plaintiffs have failed to establish standing.

The insufficiency of Plaintiffs' commissioned testing is further underscored by the small sample size. Plaintiffs argue that their commissioned testing's small sample size should not

preclude the Court from extrapolating its results to find that adulterations were systemic and pervasive. (Pls.' Opp. at 11.) The Court disagrees. Plaintiffs first argue that *John* is distinguishable because *John* concerned items that were not mass-produced whereas, as Plaintiffs argue, they have pleaded that Defendant's manufacturing process was "uniform, mass-produced, and sourced from a single production stream." (*Id.*) Plaintiffs are wrong. They have not, despite their representation, pleaded that Defendant's manufacturing process is uniform, mass-produced, nor sourced from a single production stream. (*See* Am. Compl.) Thus, the Court declines to credit this argument. Plaintiffs next argue that *John* forecloses a facial attack on a study's sample size on a motion to dismiss. (Pls.' Opp. at 11.) Here again, Plaintiffs are wrong. *John* forecloses facial attacks on a study's methodology—not the sample size. *John*, 858 F.3d at 737. Indeed, the Court struggles to find how it could find that a study that looks at five samples would allow a court to reasonably infer that a defendant was engaging in ubiquitous, systemic mislabeling. As a matter of fact, other courts have continued to examine sample size following *John*. *Esquibel v. Colgate-Palmolive Co.*, No. 23-CV-00742, 2025 WL 1785865, at *1 (S.D.N.Y. June 27, 2025) (four samples insufficient); *Kell v. Lily's Sweets*, 2024 WL 1116651, at *4 (S.D.N.Y. Mar. 13, 2024) (two or three samples insufficient); *Lurenz*, 2024 WL 2943834, *3 (one sample insufficient). Because Plaintiffs have not established standing through the news reporting nor the laboratory testing, the Court finds that Plaintiffs have failed to allege widespread and systemic adulterations such that they were injured.

## CONCLUSION

For the aforementioned reasons, Defendant's motion to dismiss is GRANTED.

SO ORDERED.

Dated: Brooklyn, New York
September 30, 2026

/s/ LDH
LASHANN DEARCY HALL
United States District Judge